**NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THERESE FLAHERTY WIEBEL, | : |
| Plaintiff, | : Civil Action No. 07-3150 (SRC) |
| v. | : **OPINION** |
| MORRIS, DOWNING & SHERRED, et al., | : |
| Defendants. | : |

**CHESLER, U.S.D.J.**

This matter having been brought before the Court by the April 23, 2008 Motion to Dismiss the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Third-Party Defendants Saul Ewing, Paige MacDonald-Matthes, Esq., and James O'Toole, Esq. ("Saul Ewing Defendants") [docket item #35] and the May 9, 2008 Motion to Dismiss the Third-Party Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Third-Party Defendants Schepisi & McLaughlin, P.A., John A. Schepisi, Esq., and Silvana D. Raso, Esq. ("Schepisi Defendants") [docket item #37]. Opposition to each motion was filed by Defendants Morris, Downing & Sherred ("Morris Downing") and David L. Johnson ("Johnson") (collectively, "the Morris Firm") [docket items #36, #43]. The Court has considered the papers filed by the parties in support of and in opposition to the motions and the oral argument presented to the Court on the motions on June 18, 2008. For the reasons that follow, the Court grants the Saul Ewing and

Schepisi Defendants' motions, dismissing the Third-Party Complaint in its entirety.

I.  **BACKGROUND**

This case originated with the filing of a complaint by Plaintiff Therese Flaherty Wiebel ("Flaherty") against the Morris Firm alleging conflict of interest, legal malpractice, and an intentional tort stemming from the Morris Firm's representation of her former husband, Paul Wiebel ("Wiebel") during Flaherty and Wiebel's divorce proceedings. (Compl. ¶¶7, 9-11, 47-49.) Specifically, Flaherty alleges that Johnson, a member of Morris Downing, represented her "in drafting a Last Will and Testament, Durable Power of Attorney, and Health Care Directive" in approximately 1999 and, as a result, Johnson and Morris Downing "owed the responsibilities of a fiduciary to Flaherty." (Compl. ¶¶12-14.) Flaherty alleges she then sought to have Johnson represent her regarding a prenuptial agreement prior to her marriage to Wiebel in September 2001, but she was advised that Johnson and Morris Downing were representing Wiebel for that purpose. (Compl. ¶¶15-16.) Flaherty then asserts that, in their representation of Wiebel regarding the prenuptial agreement, the Morris Firm "represented solely [] Wiebel's interests, in direct and complete contradiction to and in conflict with the interests of Flaherty, [the Morris Downing Defendants'] client." (Compl. ¶17.) Flaherty states that she was never advised of the existence or effect of a conflict of interest, nor did she sign a waiver regarding the alleged conflict. (Compl. ¶¶18-19.) According to the Complaint, the prenuptial agreement was signed on August 28, 2001, Wiebel and Flaherty were married on September 1, 2001, Wiebel filed a complaint for divorce on May 31, 2005, Wiebel sought to enforce the terms of the prenuptial agreement, and the divorce was resolved on November 8, 2006. (Compl. ¶¶20-24.) These assertions culminate in Flaherty's statements within the Complaint that (1) "[b]ecause of their

fiduciary relationship, Flaherty trusted [] Johnson more than she would have trusted any other attorney representing [Wiebel], with whom she did not have an ongoing and continuing professional relationship"; (2) "[a]s a result of their attorney-client relationship, [] Johnson was also in a position to improperly prey on the thought processes and weaknesses of Flaherty, to Wiebel's benefit and Flaherty's detriment"; and (3) "[a]s a result of their ongoing relationship and the improper legal representation of [Wiebel] by [the Morris Firm], Flaherty was manipulated to agree to certain provisions in the pre-nuptial agreement which were contrary to her interests and rights." (Compl. ¶¶25-27.)

The Morris Firm filed an Answer to the Complaint and a Third-Party Complaint (TPC) on February 28, 2008 [docket item #19] adding as third-party defendants the law firms that represented Flaherty regarding the prenuptial agreement and the divorce. The TPC names as third-party defendants the Saul Ewing Defendants, who represented Flaherty regarding the prenuptial agreement and the Schepisi Defendants, who represented Flaherty in her divorce action. (TPC ¶¶3, 8.) Neither were named or otherwise mentioned in the original Complaint. In the event that Flaherty is awarded damages against them, the Morris Firm seeks contribution and/or indemnification from the Saul Ewing Defendants and seeks contribution from the Schepisi Defendants. (TPC ¶¶4, 11.)

II.     LEGAL ANALYSIS

   A.     **Standard of Review**

A defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). In reviewing the motion, a court must draw all reasonable inferences in favor of the non-moving party. See Scheuer v. Rhodes, 416 U.S. 232,


236 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Even if it appears "that a recovery is very remote and unlikely[,]" the complaint may proceed.  Scheuer, 416 U.S. at 236.  To survive a motion to dismiss, the complaint need not provide detailed factual allegations.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007).  However, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.  The Court is not obligated to give credence to bald assertions or legal conclusions presented as fact.  Id.; In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997).

    **B.**    **Discussion**

        **1.**    **Saul Ewing Defendants**

The Saul Ewing Defendants assert that the TPC fails to state a claim upon which relief can be granted, arguing that "a claim for contribution cannot be brought against adverse counsel where neither fraud nor deceit is at issue" and "there is no basis for the Morris Firm's claim for indemnification against Saul Ewing."  (Third-Party Defs. Saul Ewing's Br. in Supp. of Mot. to Dismiss the Third-Party Compl. 5-13 [docket item #35].)  The Morris Firm argues that the contribution claim is proper as it accrued at the same time as the claim in the underlying complaint, namely at the time Flaherty entered into the prenuptial agreement, and that the TPC is not precluded by New Jersey case law regarding liability of successor counsel to a predecessor attorney.  (Defs./Third-Party Pls. Morris, Downing, & Sherred & David L. Johnson's Br. in Opp. to Mot. to Dismiss the Third-Party Compl. 4-8 [docket item #36] ("Morris Br.").)  The Court need not address these issues, since the TPC, on its face, fails to sufficiently allege that the Saul Ewing Defendants committed a tort.

New Jersey's Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5 ("JTCL"),

allows joint tortfeasors to seek contribution from one another, N.J.S.A. 2A:53A-2, and applies to "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them" N.J.S.A. 2A:53A-1. The purpose of this law is to "promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." Verni ex rel. Burstein v. Harry M. Stevens, Inc., 387 N.J. Super. 160, 207 (App. Div. 2006), certif. denied, 189 N.J. 429 (2007) (quoting Holloway v. State, 125 N.J. 386, 400-01 (1991)). The underlying tort for which the TPC impleads the Saul Ewing Defendants is malpractice. Within New Jersey, "to prevail on a claim of legal malpractice, a plaintiff must prove the existence of an attorney-client relationship that gives rise to a duty of care, the breach of such duty, and proximate causation." Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo ("Brach, Eichler"), 345 N.J. Super. 1, 12 (App. Div. 2001) (citing DeAngelis v. Rose, 320 N.J. Super. 263, 274 (App. Div. 1999)). Specifically, "[l]awyers owe a duty to their clients to provide their services with reasonable knowledge, skill, and diligence." Dixon Ticonderoga Co. v. Estate of O'Connor, 248 F.3d 151, 171 (3d Cir. 2001) (quoting Ziegelheim v. Apollo, 128 N.J. 250, 260 (1992)); see also Ziegelheim, 128 N.J. at 260-61.

The TPC does not offer any facts to show that the Saul Ewing Defendants committed a tort. In the pertinent part of the TPC, the Morris Firm alleges that

> 2. If, as plaintiff alleges in her complaint, she suffered damages because she did not achieve or acquire what she thought she should achieve or acquire in the negotiation and/or execution of the pre-nuptial agreement, that shortcoming was due, in whole or in part, to the efforts of her counsel in connection with that agreement, Paige MacDonald-Matthes, Esq. . . . and James O'Toole, Esq. . . . both members of the Pennsylvania bar and of the law firm of Saul Ewing, LLP . . . at the time of the negotiation and/or execution of the agreement.

> 3. Specifically, Mac[D]onald-Matthes, O'Toole and the Saul Ewing law firm represented plaintiff regarding the pre-nuptial agreement and advised her concerning its terms, her rights and negotiation of the agreement. If plaintiff was disserved in that respect, third party defendants Mac[D]onald-Matthes, O'Toole and Saul Ewing are answerable to plaintiff for all or part of any damages she may have suffered.

(TPC ¶¶2-3.) While accepting these allegations as true and "draw[ing] all reasonable inferences in favor of the non-moving party, see Scheuer v. Rhodes, 416 U.S. at 236, the Court notes that the TPC fails to make any factual assertions as to the existence of legal malpractice. Instead, all the TPC indicates is that "[i]f plaintiff was disserved" it is due, at least in part, to the Saul Ewing Defendants' representation. (TPC ¶3.) Alleging that Plaintiff may have been "disserved" without alleging any facts as to what constituted that disservice is insufficient to show that an attorney failed to act with the required "reasonable knowledge, skill, and diligence" that is discussed at length by both the Third Circuit and the New Jersey Supreme Court in their explanation of legal malpractice under New Jersey law. See Dixon Ticonderoga, 248 F.3d at 171; Ziegelheim, 128 N.J. at 260-61.

Further, nothing specific about the representation by Saul Ewing is identified in the underlying Complaint. Specifically, Flaherty makes no allegations regarding the representation that she received from the Saul Ewing Defendants; the Saul Ewing Defendants are never mentioned in the Complaint. (See Compl. ¶1-49.) Instead, the Complaint focuses entirely on the alleged existence of a duty between the Morris Firm and Flaherty. (See id.) Therefore, the underlying Complaint fails to assert that Defendants Saul Ewing breached a duty of care to Flaherty, a required element of a legal malpractice pleading. See Dixon Ticonderoga, 248 F.3d at 171; Ziegelheim, 128 N.J. at 260-61.

As such, reading the Complaint and the TPC together, a breach of duty by the Saul Ewing Defendants is never alleged, and, as a result, it is never asserted that a breach of duty by the Saul Ewing Defendants was the proximate cause of Flaherty's alleged injuries. See Brach, Eichler, 345 N.J. Super. at 12. Therefore, no allegation of malpractice that is sufficient "raise a right to relief above the speculative level" has been pled. See Bell Atl., 127 S. Ct. at 1965. All that is offered are "bald assertions or legal conclusions presented as fact[,]" a showing insufficient to overcome a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Bell Atl., 127 S. Ct. at 1965.

      **2.**    **Schepisi Defendants**

The core of the Schepisi Defendants argument is that the TPC fails to state a claim upon which relief can be granted because successor counsel cannot be held liable to its predecessor for contribution where no duty exists between counsel, and no duty existed in this situation. (Schepisi Defs.' Br. in Supp. of Mot. to Dismiss Third-Party Compl. 6-10 ("Schepisi Br.").) The Morris Firm's claim is that, if Flaherty did not receive a fair settlement in her divorce, the Schepisi Defendants inadequately represented her during the divorce and the Schepisi Defendants' inadequate representation contributed to the harm for which Flaherty seeks damages from the Morris Firm. (Morris Br. 5.) The Morris Firm contends that contribution claims exist based on this alleged common liability, and New Jersey law that a successor attorney owes no duty to a predecessor attorney does not apply, as the Morris Firm is claiming that the Schepisi Defendants owed a duty to Flaherty, not to the Morris Firm. (Morris Br. 5-11.) The Court finds that no duty exists between the Schepisi Defendants and the Morris Firm, therefore the TPC fails to state a claim upon which relief can be granted.

Under the JTCL, "[i]t is common liability at the time of the accrual of plaintiff's cause of action which is the [s]ine qua non of defendant's contribution right." Connell, Foley, & Geiser, LLP v. Israel Travel Advisory Serv., Inc., 377 N.J. Super. 350, 364 (App. Div.) (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 72 (2004)) (emphasis omitted), certif. denied, 185 N.J. 298 (2005). Joint liability can therefore only stem from a single injury. Cherry Hill, 182 N.J. at 73. As such, "separate acts of malpractice cannot constitute the 'joint liability' required for the imposition of contribution liability under the JTCL." Id. Identical facts alone are not sufficient to support a JTCL claim; liability must also be shared: "[a] claim of indemnity is not sufficiently alleged solely on the basis that the claims arose out of the same set of facts. Third-party plaintiff must also allege facts which show that third-party defendant's liability rises from the liability of third-party plaintiff to plaintiff." Id. at 74 (quoting Cleveland v. Farber, 361 N.Y.S.2d 99, 100 (N.Y. App. Div. 1974)). Furthermore, under New Jersey law, a legal malpractice claim accrues "only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Grunwald v. Bronkesh, 131 N.J. 483, 494 (1993); see also Olds, 150 N.J. at 439.

New Jersey law states that, "in the context of litigation, successor attorneys have no duty of care to their predecessors[,]" so a claim for contribution under the JTCL is unsustainable. Connell, Foley, 377 N.J. Super. at 359 (quoting Olds v. Donnelly, 150 N.J. 424, 443-44 (1997)). The reasoning behind this rule is that "third-party or cross-complaints filed by an original attorney against a subsequent attorney undermine the subsequent attorney's undivided loyalty to the client." Olds, 150 N.J. at 443. Despite this, a claim for contribution under the JTCL by co-counsel is ordinarily permissible, because, where a client sues his or her attorney for legal

8

malpractice, an implied waiver of the attorney client privilege occurs; where a client retains two attorneys to jointly handle identical litigation and sues one for malpractice, under most circumstances, the sued attorney seeking contribution from his or her co-counsel does not cause any unfairness to the client, as the waiver of privilege already took place. Connell, Foley, 377 N.J. Super. at 361-64.

To establish that a viable claim for contribution exists under the JCTL, the Morris Firm must allege facts that show that the Schepisi Defendants' liability arises from the Morris Firm's alleged liability to Flaherty. See Cherry Hill, 182 N.J. at 74 (quoting Cleveland, 361 N.Y.S.2d at 100). The underlying Complaint focuses entirely on the prenuptial agreement; questions regarding representation during the divorce proceedings are not raised. Therefore, the Morris Firm's liability, if any is found, stems from the prenuptial agreement while the Schepisi Defendants' liability, again, if any, would stem from their representation during the divorce proceedings. Although it could be argued that Flaherty did not know of her injury regarding the prenuptial agreement until the divorce was finalized and the statute of limitations on a malpractice claim does not begin to run until the client knows or should have known of the injury, Grunwald, 131 N.J. at 494, that argument does not cure the Morris Firm's failure to demonstrate that its liability and the Schepisi Defendants' liability stem from the same source, see Cherry Hill, 182 N.J. at 74. As such, due the Morris Firm's failure to allege facts that show that the Schepisi Defendants' liability arises from the same liability as their liability, namely from the prenuptial agreement, a claim under the JTCL has not been adequately pled. See id.; Connell, Foley, 377 N.J. Super. at 364.

New Jersey has only found a grounds for a contribution claim under the JTCL where a

duty exists. See id. at 359, 361-64. In this case, the Morris Firm was not the Schepisi Defendants' client, nor is it co-counsel, predecessor, or successor counsel to the Schepisi Defendants. Relative to the facts at issue, the two law firms were involved with Flaherty at different stages: the Morris Firm during the drafting of the prenuptial agreement and the Schepisi Defendants during the divorce proceedings. Furthermore, they represented opposite sides: the Morris Firm was retained to represent Wiebel, now the ex-husband, and the Schepisi Defendants were retained to represent Flaherty, now the ex-wife. Here, by filing a malpractice complaint against the Morris Firm, Flaherty impliedly waived her attorney-client privilege (if one existed) as to the alleged breach of duty by the Morris Firm. See Connell, Foley, 377 N.J. Super. at 361-62. However, Flaherty's Complaint did not raise any questions relative to the representation she received from the Schepisi Defendants, call the quality of their representation into question, nor connect the Schepisi Defendants' representation to the Morris Firm. As the Schepisi Defendants' representation was separate from the alleged representation by the Morris Firm and Flaherty did not claim malpractice by the Schepisi Defendants, her implied waiver of the attorney-client privilege did not extend to the Schepisi Defendants. See id. As such, the situation in this case is far closer to that of successor and predecessor attorneys than to co-counsel, and the Morris Firm has failed to demonstrate any grounds under which the Schepisi Defendants would owe it a duty. This Court's finding that the Schepisi Defendants owed the Morris Firm such a duty would "undermine [the Schepisi Defendants'] undivided loyalty to the [Flaherty]." Olds, 150 N.J. at 443; see Connell, Foley, 377 N.J. Super. at 359. In short, no allegation of malpractice that is sufficient "raise a right to relief above the speculative level" has been pled. See Bell Atl., 127 S. Ct. at 1965.

**III.     CONCLUSION**

For the foregoing reasons, this Court grants the Saul Ewing Defendants' Motion to Dismiss the Third-Party Complaint [docket item #35] and grants the Schepisi Defendants' Motion to Dismiss the Third-Party Complaint [docket item #37], dismissing the Third-Party Complaint in its entirety.  An appropriate form of order will be filed together with this Opinion.

      /s Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

DATED: July 14, 2008