## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**SCHEPISI & McLAUGHLIN, P.A.**
473 SYLVAN AVENUE
PO Box 1313
ENGLEWOOD CLIFFS, NJ 07632
201-569-9898
Attorneys for Plaintiff
SDR/lda/600173

| | |
|---|---|
| THERESE FLAHERTY WIEBEL<br><br>*Plaintiff,*<br><br>vs.<br><br>MORRIS, DOWNING & SHERRED and DAVID L. JOHNSON<br>*Defendants.* | Civil Action No. 2:07-cv-3150(SRC)<br><br>**FIRST AMENDED COMPLAINT &<br>JURY DEMAND** |

Plaintiff Therese Flaherty Wiebel who resides at 50 West 86th Street, New York, New York  10024 does by way of Complaint against Defendants hereby says:

### JURISDICTION AND VENUE

1.      Jurisdiction is based upon the diverse citizenship of the parties pursuant to 28 U.S.C. § 1332.

2.      Plaintiff Therese Flaherty Wiebel is a resident of the State of New York while the Defendants are residents of or located in the State of New Jersey.

3.      The amount in controversy exceeds $75,000.00 as required by 28 U.S.C. § 1391.

4.      Venue is properly laid in the District Court of New Jersey pursuant to 28 U.S.C. § 1391 since Defendant David L. Johnson resides in the judicial district of New

Jersey and Defendant Morris, Downing & Sherred, LLP is located in the judicial district of New Jersey.

5.     A substantial part of the events or omissions giving rise to the claim occurred in the District of New Jersey.

6.     The Defendants David L..Johnson ("Defendant Johnson") and Morris, Downing & Sherred, LLP ("Defendant Law Firm") are subject to personal jurisdiction in the District of New Jersey at the time this action is commenced pursuant to 28 U.S.C. § 1391.

## NATURE OF THE ACTION

7.     This is a civil action arising from the negligent and intentional acts of Defendants; the conflicts of interest of  Defendants which resulted in Plaintiff relying upon the false representations of Defendants; the malpractice committed by  Defendants against Plaintiff, Defendants breach of the contract between Plaintiff; their breach of the covenant of good faith and fair dealing,  and if the Court determines that Plaintiff was a non-client of Defendants, the misrepresentations made by Defendants to Plaintiff which they induced or acquiesced to her rely upon .

## PARTIES

8.     Plaintiff Therese Flaherty Wiebel ("Flaherty") resides at 50 West 86th Street, Apt. C-3, New York, New York.

9.     Defendant Johnson, with offices at 1 Main Street, Newton, New Jersey 07860  is an Attorney at Law licensed to practice law in New Jersey.

10.     Defendant Law Firm is a limited liability partnership which is located at One Main Street, Newton, New Jersey 07860 in which Defendant Johnson was at all times relevant hereto an employee, partner or principal.

## FACTS AND BACKGROUND

11.     Plaintiff was formerly married to Paul Wiebel ("Wiebel") from September 1, 2001 until November 8, 2006.

12.     Plaintiff met Wiebel in 1995 when she was a makeup artist and hairdresser living in New York City.

13.     Wiebel was older than Plaintiff, had been married before and had 2 teenaged sons.

14.     Wiebel was an affluent and successful business man who ran several businesses, owned many residential, commercial, vacation and investment properties.

15.     During the course of their relationship, Wiebel insisted that Flaherty relocate to New Jersey where he lived, leaving behind her work, her apartment and her life in New York City in order to travel with Wiebel and assist him in raising his sons.

16.     Plaintiff was reluctant to relocate but as her relationship with Wiebel became more serious, she began spending more time with Wiebel and his family in Bernardsville, New Jersey.

17.     While Plaintiff was spending a great deal of time with Wiebel, caring for his home, his family and his children, she still maintained her residence in New York City.

18.     Wiebel introduced Flaherty to Defendant Johnson.

19.     At the time of their introduction, Defendant Johnson was either an associate or partner at Defendant Law Firm.

20.     Plaintiff knew that Defendant Johnson and Wiebel were very good friends and that they had been involved in business and legal matters over the course of at least 20 years.

21.     After meeting Defendant Johnson, Plaintiff began to socialize with him and Wiebel.

22.     Defendant Johnson, in addition to socializing with Plaintiff, also socialized with Plaintiff's father, William Flaherty.

23.     Plaintiff considered Defendant Johnson to be her friend in addition to being Wiebel's friend.

24.     In March of 1998, Plaintiff and Wiebel became engaged.

25.     In anticipation of the marriage, which was scheduled for September 25, 1999, Plaintiff and Wiebel discussed Plaintiff giving up her job and residence in New York City.

26.     Plaintiff was reluctant to relocate because of her concern that if the marriage between her and Wiebel did not work out, she would be left with no home and no means of supporting herself.

27.     To alleviate Plaintiff's fears, Wiebel suggested that they purchase a multi-tenant property in New York City, which would serve as Plaintiff's residence and would allow her to rent out the other units for commercial and residential use, thereby providing a stream of income to her.

28.     Plaintiff found a townhouse located at 50 West 86th Street, New York, New York (the "Property") which contained several residential units and commercial spaces.

29.     Plaintiff showed Wiebel the Property and he agreed that it would be purchased before the marriage and would be owned by Plaintiff and Wiebel.

30.     Plaintiff and Wiebel agreed that management of  the Property would become Plaintiff's new job.

31.     Wiebel told Plaintiff that the Property would be purchased by a limited liability company.

32.     In anticipation of the purchase, Plaintiff rented an apartment in the townhouse, which apartment she made her residence.

33.     Wiebel told her he would cause an entity to be formed in order to acquire the Property.

34.     Wiebel told Plaintiff that the entity would be owned jointly by her and Wiebel.

35.     Wiebel told Plaintiff that prior to the marriage, she would own 49 percent of the entity and that he would own 51 percent of the entity.

36.     Wiebel further told Plaintiff that upon their marriage, he would transfer to her an additional one percent of his interest in the entity so that they would each own 50 percent of the entity.

37.     At that time, Wiebel recommended to Plaintiff that she obtain estate planning advice from Defendants in anticipation of the acquisition of this asset.

38.     Prior to these discussions with Wiebel and prior to the formation of the entity, Plaintiff had minimal assets and owned no real property.

39.     In the latter part of 1998, in anticipation of the formation of the entity and the acquisition of the Property, Plaintiff retained Defendant Johnson and Defendant Law Firm to represent her for estate planning and other purposes.

40.     During the course of her consultation with Defendant Johnson, Plaintiff advised him that she sought estate planning advice from him because she was going to obtain a 49 percent in an entity that was going to acquire property worth several million dollars.

41.     When she retained him, Defendant Johnson was aware that she and Wiebel were engaged to be married on September 25, 1999.

42.     During the course of her consultations with Defendant Johnson, Plaintiff confided in him that she trusted Wiebel completely.

43.     Plaintiff further confided in Defendant Johnson that she had no business experience and that the only knowledge she had of business related to her profession as a hairstylist and makeup artist.  Plaintiff retained Defendant Johnson to obtain his advice as to how her estate should be planned so that she could ensure that in the event of her death, her only significant asset, the entity that would own the Property would pass to the persons whom she designated in her Will.

44.     Plaintiff told Defendant Johnson a great deal of personal information about herself, including information about her personal and family relationships, her limited finances, her limited business experience and other personal information

regarding her future plans with Wiebel, as well as information regarding her testamentary intentions.

45.     Defendant Johnson recommended that Plaintiff, in addition to having a Will prepared, should also have a Power of Attorney and a Health Care Directive in place.

46.     After discussions with Defendant Johnson, Plaintiff decided that Wiebel should be designated as Plaintiff's agent in the Power of Attorney and in the Health Care Directive.

47.     Throughout the estate planning process that Defendant Johnson was retained for, Plaintiff relied on his knowledge and expertise in planning her estate and his advice as to whom she should designate as her agent in the Power of Attorney and Health Care Directive.

48.     On January 20, 1999, Wiebel caused an entity known as 50 W. 86th Street, LLC ("the Entity") to be formed in the State of New York in order to acquire the Property.

49.     On February 18, 1999, the Entity purchased the Property at 50 West 86th Street, New York, New York.

50.     On February 22, 1999, four days after the acquisition of the Property by the Entity, Defendant Johnson forwarded to Plaintiff a draft of the Will, a draft of the Power of Attorney, and a draft of the Health Care Directive that he prepared for her.

51.     The Will prepared by Defendant Johnson specified that Plaintiff was leaving her clothing, jewelry, household affects and other tangible personal property to her father, William Flaherty.

52.     The Will further specified that all the rest, residue and remainder of her property were to be placed in a Residuary Trust for the benefit of her father, William Flaherty during his lifetime.

53.     The Will further specified that the trustees of the trust created in the Will were to pay to William Flaherty, no less than quarterly, the greater of the sum of $5,000.00 or five percent of the value of the principal of the trust in addition to so much of the principal of the trust as the trustees determined necessary for William Flaherty's maintenance, health and support.

54.     The Will drafted by Defendant Johnson further specified that upon William Flaherty's death, the trustees were to divide the trust property into equal shares so as to provide one share for each niece and nephew of Plaintiff then living and one share for the then living descendants of any deceased beneficiary.

55.     The Will drafted by Defendant Johnson further specified that the trust property going to the nieces and nephews of Plaintiff and the living descendants of the deceased beneficiaries would be administered by a secondary trust until the beneficiaries of the trust reached the age of 35 years.

56.     The Will prepared by Defendant Johnson was based on the fact that Plaintiff would own part of the Entity which owned the Property since Plaintiff had no other asset which would generate an income stream to Plaintiff's father.

57.     The Will drafted by Defendant Johnson reflects Plaintiff's desire that her ownership in the Entity would not pass to Wiebel upon her death but would pass to her family.

58. The Will drafted by Defendant Johnson reflects that Plaintiff advised him that her ownership interest in the Entity was of paramount importance to her in that she chose not to bequeath Wiebel any portion of her ownership in the Entity, thereby making clear that she wanted to prevent Wiebel from ever acquiring her interest in the Entity, even after her death.

59. The document drafted by Defendant Johnson reflects Plaintiff's communications to him that she would, after the Entity acquired the Property, own a significant asset which was expected to generate a minimum of $20,000.00 per year in income to be paid to her father in the event she predeceased him.

60. At the time Defendant Johnson drafted the Will, he knew that the primary asset that would comprise the corpus of Plaintiff's residuary trust was to be Plaintiff's ownership interest in the Entity that owned the Property. This is confirmed by the fact that Defendant Johnson did not send the drafts of the Wills and Power of Attorney to Plaintiff until after the Entity was created and the Property purchased.

61. Plaintiff gave her attorney, Defendant Johnson the personal thoughts that a client gives to an attorney as to her level of trust in Wiebel. She confided in Defendant Johnson that she trusted Wiebel so much that she appointed him as her Health Care Representative who would make all medical decisions for her should she be unable to make them for herself.

62. Defendant Johnson also advised Plaintiff that she needed a Power of Attorney, which he then prepared, giving Wiebel the right to act in her place and stead.

63. The documents drafted by Defendant Johnson confirm that Plaintiff conveyed to Defendant Johnson her innermost thoughts showing her trust in Wiebel in

that she asked Defendant Johnson to prepare a Power of Attorney which would gave Wiebel complete access over all of Plaintiff's assets, including the Entity which owned the Property.

64.     Plaintiff retained Defendant Johnson to ensure that the asset that she was to receive, her ownership in the Entity that owned the Property, would be protected in the event of her death and that during her lifetime, Wiebel would have her Power of Attorney.

65.     Plaintiff broke off her engagement to Wiebel on August 26, 1999, less than a month before the scheduled September 25, 1999 wedding.

66.     Plaintiff continued to use Defendant Johnson and Defendant Law Firm through 1999.

67.     In October of 1999, Plaintiff used Defendant Johnson and Defendant Law Firm to represent her with respect to a potential claim arising out of personal injury she had sustained.

68.     After Defendant Johnson and Defendant Law Firm did some preliminary work in that matter, Plaintiff opted not to pursue the matter any further.

69.     Plaintiff and Wiebel became engaged for the second time on April 21, 2001 and planned to marry on September 1, 2001.

70.     In or about August 2001, less than a month prior to the scheduled wedding, Plaintiff was presented with a pre-nuptial agreement given to her by Wiebel.

71.     At that time, Plaintiff considered Defendant Johnson and Defendant Law Firm her attorneys and further, considered Defendant Johnson her friend.

72.     Plaintiff told Wiebel that before she would sign the agreement, she would take it to Defendant Johnson to obtain his advice in relation to the terms and provisions of the agreement.

73.     At that time, Plaintiff was told by Wiebel that Defendant Johnson and Defendant Law Firm had drafted the document as Wiebel's attorneys and that she should not contact them about the agreement.

74.     Neither Defendant Johnson nor Defendant Law Firm ever contacted Plaintiff to advise her that they were drafting and negotiating a pre-nuptial agreement on Wiebel's behalf and against her interest.

75.     When Wiebel presented the pre-nuptial agreement to Plaintiff, Plaintiff believed that she owned 49 percent of the Entity.  This belief was based upon the statements made by Wiebel that she owned 49 percent of the Entity and confirmed by the actions of the Defendants in preparing her Will and her Power of Attorney, both of which were prepared for the purpose of handling her interests in life and in death with regard to the Entity.

76.     The pre-nuptial agreement drafted by Defendant Johnson stated in paragraph 11 that Plaintiff owned 49 percent of the Entity and that Wiebel owned 51 percent of the Entity.

77.     Plaintiff read and relied upon the representation, which she had the right to do, since it was made by her attorney and friend Defendant Johnson and since it confirmed the statements made by her husband-to-be Wiebel.

78.     Plaintiff reliance on the representation contained in the agreement was reasonable since the representation confirmed what she was told by her husband-to-be

and was drafted by Defendant Johnson, her attorney and friend.  The representation in paragraph 11 confirmed Defendant Johnson's first conversations with Plaintiff when she met with Defendant Johnson so that he could prepare her Will and Power of Attorney in anticipation of her ownership in the Entity that would own the Property.

79.     The terms of the pre-nuptial agreement specified that once Plaintiff and Wiebel were married, Wiebel would give to Plaintiff an additional 1 percent ownership interest in the Entity so that she and Wiebel would then each own 50 percent of the Entity.

80.     At the time Defendant Johnson prepared the pre-nuptial agreement, he knew Wiebel would be presenting it to Plaintiff and that Plaintiff would rely upon Defendant Johnson's representation as contained in the agreement that Plaintiff owned 49 percent of the Entity, since that was the purpose for which she sought his estate planning advice and the reason he prepared her Will and Power of Attorney.

81.     At the time Defendant Johnson prepared the pre-nuptial agreement, he knew that Plaintiff would rely upon his representations as to the ownership interest and would not question that representation made by him, her attorney, in the agreement.

82.     At the time Defendant Johnson prepared the pre-nuptial agreement, Defendant Johnson knew or should have known that Wiebel owned 99 percent of the Entity and the remaining 1 percent was owned by Wiebel's son.

83.     At the time Defendant Johnson drafted the pre-nuptial agreement, Defendant Johnson was aware that Plaintiff had no ownership interest in the Entity.

84.     Defendants improperly preyed on the thought processes and weaknesses of Flaherty, to Wiebel's benefit and to Flaherty's detriment, when the pre-nuptial

agreement was drafted and given to Wiebel to present to Flaherty, which contained a representation which Defendant Johnson knew Flaherty would reasonably rely upon.

85. Defendant Johnson and Defendant Law firm owed a duty to Plaintiff to advise Plaintiff that she had no ownership interest in the entity.

86. Defendant Johnson and Defendant Law Firm withheld this information from Plaintiff and drafted an agreement which confirmed Plaintiff's mistaken belief that she owned 49 percent of the Entity. This act on the part of the Defendants was intentional, grossly negligent or negligent and done solely for the purpose of benefiting their client Wiebel to the damage and detriment of their other client, Plaintiff.

87. Plaintiff was never advised by Wiebel or Defendants that she did not own 49 percent of the Entity at the time she signed the pre-nuptial agreement.

88. Defendants, acting solely to promote Wiebel's interests, prepared the pre-nuptial agreement in a manner that was in direct and complete contradiction to and in conflict with Plaintiff's interests, Defendants' other client and contrary to the representations Defendants made to her.

89. Defendant Johnson knew or should have known that Plaintiff, who he learned was a naïve and trusting individual by virtue of his representation of her, would rely upon the misrepresented facts all to her damage and detriment.

90. Defendant Johnson and Defendant Law Firm never advised Plaintiff that a conflict of interest existed with respect to Defendant's representation of Wiebel against Plaintiff.

91. Defendants never explained to Plaintiff the effect of the conflict of interest.

92.     Neither Defendant Johnson nor Defendant Law Firm asked Plaintiff to sign any document wherein she waived the conflict, which failure violated the Rules of Professional Conduct.

93.     Had Defendants properly advised Plaintiff of the conflict of interest and had they given her the right to request that the neither Defendant Johnson nor Defendant Law Firm  represent either her or Wiebel, the injuries and damages that Plaintiff sustained would not have occurred.

94.     Defendant Johnson put Plaintiff in a position of having an attorney who represented her then represent Wiebel against Plaintiff in the preparation of an adversarial document, misuse information they obtained from Plaintiff against her in their representation of Wiebel, and cause Plaintiff to rely upon the misrepresentations by Defendant as to what assets were in her name.

95.     Had  Defendants properly advised Plaintiff and not violated the Rules of Professional Conduct, Plaintiff would have had the attorney who represented her in the negotiation  of the pre-nuptial agreement confirm that Plaintiff did in fact have an 49 percent interest in the Entity, and not rely upon the representation made by Defendant Johnson.

96.     Due  to the fact that Defendants were Plaintiffs attorneys, Plaintiff had the right  to and  did reasonably rely on the representation contained in the pre-nuptial agreement prepared by Defendants.

97.     Plaintiff executed the pre-nuptial agreement on August 28, 2001.

98.     Plaintiff and Wiebel were married on September 1, 2001.

99.    At no time prior to or subsequent to the marriage of Plaintiff and Wiebel did Defendant Johnson or Defendant Law Firm advise Plaintiff that she had no ownership interest whatsoever in the Entity.

100.    At the time Plaintiff executed the pre-nuptial agreement, she had the right to rely upon the representations in the pre-nuptial agreement prepared by Defendants and she reasonably relied upon such representations knowing it was drafted by Defendant Johnson and Defendant Law Firm who were her attorneys and by Defendant Johnson, her friend.

101.    At no time did the Defendants give any reason to Plaintiff to question their representation that she owned 49 percent of the Entity.

102.    Plaintiff trusted Defendant Johnson and Defendant Law Firm.

103.    Plaintiff invited her attorney and friend, Defendant Johnson and his wife to Plaintiff and Wiebel's wedding.

104.    After the wedding, Defendants continued to carry on the fraud and misrepresentation that Plaintiff owned an interest in the Entity.

105.    In the spring of 2003, Plaintiff used Defendants to handle a rent dispute with one of the tenants who lived at the Property.

106.    The letter was written by Defendants on behalf of Plaintiff to one of the tenants who was not paying rent.  At that time, Defendants treated Plaintiff in such a manner that she believed and had a reasonable right to believe that she had a ownership interest in the Entity and therefore, could act on its' behalf.

107.    The letter written by Defendant Johnson to the tenant who was delinquent in the rent payments bolstered Plaintiff's reasonable reliance on the representation that

she owned an interest in the Entity since the letter written by Defendant Johnson was not copied to Wiebel, only to Plaintiff.

108.    From the time of Plaintiffs' first retention of the Defendants, Plaintiff considered and had the right to consider the Defendants as Plaintiff's lawyer in that Plaintiff and Defendants had a continuing attorney/client relationship which did not end. It was a relationship that was sporadic but it was continuing.

109.    In 2003, after Plaintiff had been married to Wiebel for almost two years, the Defendants handled the refinancing of the Property on behalf of the Entity.

110.    Plaintiff was unaware of such refinancing and was never advised by the Defendants that the refinancing was going forward.

111.    During the course of Defendants' representation of the Entity in the refinancing, they Defendants knew that Plaintiff had no ownership interest in the Entity, notwithstanding the fact that they knew she was supposed to have a 50 percent interest in the Entity.

112.    Defendants had a duty to Plaintiff to advise her that she did not have a 50 percent ownership interest in the Entity which they failed to do.

113.    Rather than advising Plaintiff, Defendants handled the refinancing of the Property, allowed the mortgage to be increased by more than one million dollars and then facilitated the distributed of such one million dollars to Wiebel to the exclusion of Plaintiff.

114.    Defendant Johnson and Defendant Law Firm did not advise Plaintiff about the refinancing or the distribution of the proceeds.

115.    Defendant Johnson and Defendant Law Firm did not distribute any portion of the proceeds from the refinancing to Plaintiff, even though Defendant Johnson and Defendant Law Firm knew from the representations in the pre-nuptial agreement that they prepared that Plaintiff was to owned 49 percent of the Entity prior to the marriage and 50 percent of the Entity after the marriage.

116.    Defendant Johnson knew Plaintiff believed she owned 49 percent of the Entity prior to marriage and own 50 percent after the marriage since this was discussed with him and was the reason for the estate planning for which she retained him.

117.    Defendant Johnson knew Plaintiff believed she owned 50 percent of the Entity after the marriage since this was discussed with him during the course of his representation of her.

118.    The Defendants owed an obligation to the Plaintiff to advise her that she did not own the 49 percent interest prior to the marriage or the 50 percent interest after the marriage.  The Defendants breached this duty and failed to so advise Plaintiff.

119.    On May 31, 2005, Wiebel filed a complaint for divorce against Plaintiff wherein he  sought to enforce the terms of the pre-nuptial agreement.

120.    After the filing of the Complaint for Divorce, Plaintiff discovered for the first time that she had no ownership interest in the Entity contrary to the representations contained in the prenuptial agreement prepared by Defendant Johnson, her attorney and friend who was also acting in a conflicting  role by representing Wiebel.

121.    After the commencement of the divorce proceedings by Wiebel against Plaintiff, Plaintiff learned that the property was encumbered by an additional $1 million

dollar in mortgage debt, all of which funds were turned over by Defendants to Wiebel without the knowledge of Plaintiff.

122.   Plaintiff attempted to set aside the pre-nuptial agreement since the facts upon which she had based her consent to the pre-nuptial agreement and waiver to equitable distribution no longer existed due to the increased indebtedness on the Property.

123.   Plaintiff's attempt to negotiate a fair settlement of this issue could only be done if the pre-nuptial agreement were not enforced due to the fact that Plaintiff did not own 50 percent of the Entity as represented in the pre-nuptial agreement by Defendants and because the net value of the Property had been reduced by one million dollars as a result of the refinancing.

124.   If the Court deciding the divorce proceedings set aside all of the terms of the pre-nuptial agreement, Plaintiff would not have been entitled to any ownership interest in the Entity since that Entity was acquired by Wiebel prior to marriage with Wiebel's premarital funds.

125.   Since Plaintiff did not own any portion of the Entity as represented in the pre-nuptial agreement, Plaintiff was left the choice of having the Court set aside the pre-nuptial agreement leaving her with no ownership interest in the Entity, or accept the pre-nuptial agreement and acquire an asset with a million dollars less equity than she had bargained for, Plaintiff was at a disadvantage in negotiating any settlement with Wiebel in the divorce proceedings based upon her reasonable reliance upon the representations made by Defendant Johnson when he drafted the prenuptial agreement which stated that she had a 49 percent ownership interest in the Entity when she actually had no ownership interest in the Entity

126.    Since Plaintiff trusted Defendant Johnson when he drafted the pre-nuptial agreement for Wiebel and made representations therein, Plaintiff gave up rights she would have had to equitable distribution in exchange for an ownership interest in the Entity, the sole asset she would take in equitable distribution when she and Wiebel divorced.

127.    The misrepresentation contained in the pre-nuptial agreement, which Plaintiff reasonably relied upon, forced her to litigate at a great expense and be caused her to be exposed to a risk of having no ownership interest in the Entity.

128.    But for the actions of Defendants, Plaintiff would have had, at the time the Complaint for Divorce was filed, a 50 percent ownership interest in the Entity which owned the Property and a mortgage of only $1.6 Million on the property, not $2.6 Million.

129.    During the course of the Divorce proceedings, Plaintiff had to litigate at a great expense to prevent Wiebel from selling the property, which he continually sought to do since he claimed he was the sole owner of the Entity.

130.    Plaintiff and Wiebel were divorced on November 8, 2006, at which time a Property Settlement Agreement was signed by them.

## CLAIMS FOR RELIEF

## FIRST COUNT

## (CONFLICT OF INTEREST)

131.    Plaintiff repeats and reasserts all the allegations and claims as identified above and incorporate same as if fully set forth herein at length.

132.    But for the conflict of interest and the improper actions of Defendant, the pre-nuptial agreement as negotiated would have been more representative of Flaherty's rights and interests and the litigation concerning the pre-nuptial agreement would have been different or unnecessary.

133.    But for the conflict of interest and the improper actions of Defendants, Defendants would not have gained information from and about Plaintiff which they used against her when they took the information gained from the attorney-client relationship they had with her and misused it in order to negotiate against her interests and to the advantage of Wiebel.

134.    But for the conflict of interest and the improper actions of Defendants, Plaintiff would not have reasonably relied on the representations made by Defendants when she was presented with a prenuptial agreement drafted by Defendants which stated that she owned a 49 percent ownership interest in the Entity, when she did not and Defendants knew that she did not.

135.    But for the conflict of interest and the improper actions of Defendants, Plaintiff would have asked for proof of her ownership interest in the Entity before negotiating and executing a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her 50 percent ownership in the Entity.

136.    But for the conflict of interest and the improper actions of Defendants, Plaintiff would have asked for proof of her ownership interest in the Entity after her marriage to Wiebel since she had executed a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her 50 percent ownership in the Entity.

137.     But for the conflict of interest and the improper actions of Defendants, Plaintiff would have either not signed the pre-nuptial agreement or negotiated different and better terms of the pre-nuptial agreement had she been informed by Defendants that, contrary to their representations, she had no ownership interest in the Entity.

138.     But for the conflict of interest and the improper actions of Defendants, Plaintiff would have been advised of Wiebel's efforts to refinance the mortgage which efforts resulted in an increase of the debt on the Property by one million dollars.

139.     But for the conflict of interest and the improper actions of Defendants, Plaintiff would have received one half of the proceeds of the refinancing of the mortgage which proceeds were paid by Defendants to Wiebel and not to Plaintiff.

140.     But for the conflict of interest and the improper actions of Defendants, Plaintiff would not have faced the risk of being awarded no ownership interest in the Entity by having the pre-nuptial set aside or be forced to accept the terms of the pre-nuptial agreement and be granted an asset with one million more in mortgage debt than she had bargained for when she negotiated the terms of the pre-nuptial agreement.

141.     But for the conflict of interest and the improper actions of Defendants, Plaintiff would not have been forced to litigate in the divorce proceedings to prevent Wiebel from selling the Property.

142.     But for the conflict of interest and the improper actions of Defendants, plaintiff would not have been forced to litigate at a great expense to her in order to negotiate the terms of a property settlement agreement which varied from the terms of the pre-nuptial agreement in order to mitigate the damages caused by Defendants' conduct.

143.   By reason of the Defendants' actions, inactions as well as the conflict of interest and violations of the Rules of Professional Conduct by Defendants, Defendants have caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly and severally  as follows:

a)      Compensatory damages;

b)      Punitive damages;

c)      Attorney's fees, interest and costs of the instant suit; and

d)      Such other and further relief as this court deems just, equitable and proper.

## SECOND COUNT

### (LEGAL MALPRACTICE)

144.   Plaintiff repeats and reasserts all the allegations and claims identified in the First Count and incorporates same as if fully set forth herein at length.

145.   Defendant Johnson and Defendant Law Firm represented that they had the requisite skills to represent Plaintiff and would advocate Plaintiff's bests interests.

146.   These representations made by Defendant Johnson were false as Defendants did not possess the requisite ability and skill to adequately represent Plaintiff's interests and did not represent Plaintiff's interests.

147.   Defendant Johnson and Defendant Law Firm are obligated to exercise a degree of reasonable knowledge and skill that attorneys of ordinary ability and skill possess and to represent Plaintiff's interest over the interests of others.

148.   Defendant Johnson and Defendant Law Firm failed to satisfy their obligations and duties and deviated from the acceptable standards of practice in

connection with the rendering of legal services and as a result, Plaintiff has been severely damaged.

149.   The actions and deviations from the Rules of Professional Conduct by Defendant Johnson and Defendant Law Firm, the misrepresentations and the conflict of interest without informing Plaintiff constitute legal malpractice that have caused damage to Plaintiff.

150.   But for the malpractice of Defendants, Defendants would not have gained information from and about Plaintiff which they used against her when they took the information gained from the attorney-client relationship they had with her and misused it in order to negotiate against her interests and to the advantage of Wiebel.

151.   But for the malpractice of Defendants, Plaintiff would not have reasonably relied on the representations made by Defendants when she was presented with a pre-nuptial agreement drafted by Defendants which stated that she owned a 49 percent ownership interest in the Entity, when she did not and Defendants knew that she did not.

152.   But for the malpractice of Defendants, Plaintiff would have asked for proof of her ownership interest in the Entity before negotiating and executing a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her 50 percent ownership in the Entity.

153.   But for the malpractice of Defendants, Plaintiff would have asked for proof of her ownership interest in the Entity after her marriage to Wiebel since she had executed a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her 50 percent ownership in the Entity.

154.   But for the malpractice of Defendants, Plaintiff would have either not signed the pre-nuptial agreement or negotiated different and better terms of the pre-nuptial agreement had she been informed by Defendants that, contrary to their representations, she had no ownership interest in the Entity.

155.   But for the malpractice of Defendants, Plaintiff would have been advised of Wiebel's efforts to refinance the mortgage which efforts resulted in an increase of the debt on the Property by one million dollars.

156.   But for the malpractice of Defendants, Plaintiff would have received one half of the proceeds of the refinancing of the mortgage which proceeds were paid by Defendants to Wiebel and not to Plaintiff.

157.   But for the malpractice of Defendants, Plaintiff would not have faced the risk of being awarded no ownership interest in the Entity by having the pre-nuptial set aside or be forced to accept the terms of the pre-nuptial agreement and be granted an asset with one million more in mortgage debt than she had bargained for when she negotiated the terms of the pre-nuptial agreement.

158.   But for the malpractice of Defendants, Plaintiff would not have been forced to litigate in the divorce proceedings to prevent Wiebel from selling the Property.

159.   But for the malpractice of Defendants, Plaintiff would not have been forced to litigate at a great expense to her in order to negotiate the terms of a property settlement agreement which varied from the terms of the pre-nuptial agreement in order to mitigate the damages caused by Defendants conduct.

160.   As a result of Defendants' negligent action and/or inaction, Plaintiff has incurred legal fees in the divorce proceedings resulting from the failure of the pre-nuptial

agreement to represent her interests.  Plaintiff has been deprived of assets to which she is duly and lawfully entitled.

161.   By reason of Defendants' actions and inactions, Defendants have committed negligence which caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly and severally as follows:

a) Compensatory damages;

b) Punitive damages;

c) Attorney's fees, interest and costs of the instant suit; and

d) Such other and further relief as this court deems just, equitable and proper.

## THIRD COUNT

### (INTENTIONAL TORT)

162.   Plaintiff repeats and reasserts all the allegations and claims as identified in the First and Second Counts and incorporates same as if fully set forth herein at length.

163.   The heretofore referenced actions and/or failure to act on the part of Defendants constituted gross and wanton negligence or were intentional acts.

164.   The actions on the part of the Defendants resulted in the aforesaid damage to Plaintiff, all of which were caused by Defendants' gross and wanton negligence or intentional disregard for Plaintiff's interests.

165.   The wanton disregard and gross negligence of the Defendants amounts to an intentional tort as a matter of law which caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly and severally as follows:

a) Compensatory damages;

b) Punitive damages;

c) Attorney's fees, interest and costs of the instant suit; and

d) Such other and further relief as this court deems just, equitable and proper.

## FOURTH COUNT

### (MISREPRESENTATION BY LAWYER TO NON-CLIENT)

166.    Plaintiff repeats and reasserts all the allegations and claims as identified in the First, Second and Third Counts and incorporates same as if fully set forth herein at length.

167.    In the event it is determined by the Court that Plaintiff did not have an attorney-client relationship with Defendants when they drafted the pre-nuptial agreement for Wiebel, Defendants nevertheless still owed a duty of care to Plaintiff.

168.    Defendants owed a duty to Plaintiff since they knew or should have known that Plaintiff would rely on the representations of Defendant Johnson when he drafted the pre-nuptial agreement which contained the misrepresentation that Plaintiff had a 49 percent ownership interest in the Entity.

169.    Defendants invited and/or acquiesced in Plaintiff's reliance on the misrepresentation drafted by Defendant Johnson in the pre-nuptial agreement  which stated that Plaintiff had a 49 percent ownership interest in the Entity, when she did not

170.    Plaintiff relied on and had the right to rely on the misrepresentation in the pre-nuptial agreement drafted by Defendant Johnson wherein it stated that Plaintiff had a 49 percent ownership interest in the Entity.

171.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would have asked for proof of her ownership interest in the Entity before negotiating and executing a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her purported ownership in the Entity.

172.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would have asked for proof of her ownership interest in the Entity after her marriage to Wiebel since she had executed a pre-nuptial agreement wherein she waived all rights to equitable distribution but for her 50 percent ownership in the Entity.

173.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would have either not signed the pre-nuptial agreement or negotiated different and better terms of the pre-nuptial agreement had she been informed by Defendants that, contrary to their representations, she had no ownership interest in the Entity.

174.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would not have faced the risk of being awarded no ownership interest in the Entity by having the pre-nuptial set aside or be forced to accept the terms of the pre-nuptial agreement and be granted an asset with one million more in mortgage debt than she had bargained for when she negotiated the terms of the pre-nuptial agreement.

175.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would not have been forced to litigate in the divorce proceedings to prevent Wiebel from selling the Property.

176.   But for Defendants' conduct in inviting and/or acquiescing in her reliance, Plaintiff would not have been forced to litigate at a great expense to her in order to

negotiate the terms of a property settlement agreement which varied from the terms of the pre-nuptial agreement in order to mitigate the damages caused by Defendants conduct.

177.    Defendants actions and inactions have caused  Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly and severally as follows:

a) Compensatory damages;

b) Punitive damages;

c) Attorney's fees, interest and costs of the instant suit; and

d) Such other and further relief as this court deems just, equitable and proper.

## FIFTH COUNT

### (BREACH OF CONTRACT)

178.    Plaintiff repeats and reasserts all the allegations and claims as identified in the First, Second, Third and Fourth Counts and incorporates same as if fully set forth herein at length.

179.    Plaintiff entered into a contract with Defendants when she retained Defendant Johnson and Defendant Firm to act as her attorneys and represent her for estate planning purposes.

180.    During the course of the attorney-client relationship that existed between Plaintiff and Defendants, Plaintiff communicated to Defendant Johnson personal and private information relating to the purpose for which she retained him and Defendant Law Firm.

181.   Defendants used and revealed Plaintiff's communications, as well as information they gathered during the course of their representation of Plaintiff, to the advantage of Wiebel, another client of Defendants.

182.   Defendants breached the attorney-client privilege by using the communications and information obtained from Plaintiff against her when they drafted and negotiated the pre-nuptial agreement for Wiebel.

183.   Defendant Johnson breached the attorney-client privilege by using the communications and information obtained from Plaintiff against her when Defendants represented Wiebel when he refinanced the mortgage on the Property so as to increase the mortgage by one million dollars.

184.   Defendants breached the attorney-client privilege by using the communications and information obtained from Plaintiff against her when Defendants represented Wiebel when he refinanced the mortgage caused one million dollars in proceeds to be paid to Wiebel without any sum being paid to Plaintiff.

185.   Defendants actions and inactions constituted a breach of the contract entered into by them with Plaintiff.

186.   Defendants actions and inactions constituted a breach of the covenant of good faith and fair dealing.

187.   Defendants have caused Plaintiff to suffer damages.

**WHEREFORE,** Plaintiff hereby demands judgment against Defendants individually, jointly and severally as follows:

a) Compensatory damages;

b) Attorney's fees, interest and costs of the instant suit; and

c) Such other and further relief as this court deems just, equitable and proper.

**SCHEPISI & McLAUGHLIN, P.A.**
Attorneys for Plaintiff

By: _____
            Silvana D. Raso, Esq.

Dated: February 12, 2009

## DESIGNATION OF TRIAL COUNSEL

John A. Schepisi is hereby designated as trial counsel of record in this matter.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues so triable.

**SCHEPISI & McLAUGHLIN, P.A.**
Attorneys for Plaintiff

By: _____
            Silvana D. Raso, Esq.

Dated: February 12, 2009